PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J.D., by his next friends; MARK
DAVIS; TAMMY DAVIS,

     *Plaintiffs-Appellees,*

v.

KANAWHA COUNTY BOARD OF
EDUCATION,

     *Defendant-Appellant.*

No. 08-1244

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, Chief District Judge.
(2:06-cv-00167)

Argued: May 14, 2009

Decided: July 9, 2009

Before Sandra Day O'CONNOR, Associate Justice
(Retired), Supreme Court of the United States, sitting by
designation, WILKINSON, Circuit Judge, and Joseph F.
ANDERSON, Jr., United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Associate Justice O'Connor and Judge
Anderson joined.

**COUNSEL**

Vaughn Sizemore, BAILEY & WYANT, PLLC, Charleston, West Virginia, for Appellant. Cynthia E. Evans, Charleston, West Virginia, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

Mark and Tammy Davis, the parents of a disabled child, were awarded attorneys' fees by the district court under the Individuals with Disabilities Education Act ("IDEA") after prevailing on several claims before a hearing officer. The defendant school board challenges the award. It argues that attorneys' fees were improper because the parents rejected a settlement offer that was more favorable than the legal relief they ultimately obtained. The school board also argues that the parents were not a "prevailing party" under the IDEA.

We affirm the award of attorneys' fees. Because the school board's settlement offer explicitly referred to terms from a confidential mediation in violation of 20 U.S.C. § 1415(e)(2)(G), the district court properly refused to consider the settlement offer as evidence. Further, that court did not abuse its discretion in approving what was, after all, a much reduced award for the parents that reflected the parents' limited success. To overturn the ruling would only encourage appeals on matters best left to trial court discretion and collateral to the merits of the case.

## I.

J.D. is an autistic child who in 2005 was enrolled in public school in Kanawha County, West Virginia. His parents, Mark and Tammy Davis, believed that J.D. was not receiving a free

appropriate public education ("FAPE") and other services due him under the IDEA. In March 2005, his parents attended a mediation session with representatives of the Kanawha County Schools at which the parties drafted a settlement agreement. But J.D.'s parents decided not to sign the agreement—instead, they filed a due process complaint with the Kanawha County Board of Education ("the Board") on March 29, 2005, alleging various violations of the IDEA.

On May 13, the Board sent a letter to the parents, stating:

> Please accept this letter as the written offer of Kanawha County Schools to settle the due process hearing request filed on behalf of [J.D.], on the terms and conditions set forth in the settlement agreement reached but not signed at the mediation session held on March 11, 2005.

The parents rejected this offer, and several months later, in September 2005, a hearing officer conducted an administrative hearing that addressed five issues. First, the hearing officer asked whether J.D.'s March 2005 individual education plan ("IEP") provided sufficient individual instruction. The hearing officer ruled for the Board on this issue, holding that the IEP was appropriate. He also considered the following four issues:

1. Whether the school erred by implementing a new IEP in March 2005, after the parents filed their due process complaint;

2. Whether the school properly conducted the Multi-Disciplinary Evaluation Team assessment;

3. Whether the school owed J.D. compensatory speech and language therapy; and

4. Whether J.D. should have received extended school year services in 2004.

The hearing officer found for J.D. on all four issues. He concluded that the school should not have implemented a new IEP while the parents' request for a due process hearing was pending. He also ordered the Board to provide J.D. with a new occupational therapy evaluation and with compensatory speech and language therapy, and to hold another IEP team meeting to determine whether J.D. required compensatory extended school year services and any other assistance.

The parents appealed the first issue—whether the 2005 IEP provided sufficient individual instruction—to the district court, which affirmed the decision for the Board. The parents also requested $112,292 in attorneys' fees under the IDEA, which provides that "the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The parents argued that attorneys' fees were proper because they had prevailed on four of five issues before the hearing officer.

In response, the Board argued that section 1415(i)(3)(D)(i) of the IDEA barred the award. That section states:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if —
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not

more favorable to the parents than the offer of settle-
ment.

Specifically, the Board argued that it had made a written offer
of settlement to the parents months before the administrative
hearing; the parents rejected this offer; and the settlement
terms were more favorable to the parents than the relief even-
tually provided by the hearing officer. To support its argu-
ment, the Board provided the district court with a copy of the
letter it sent to the parents on May 13, 2005, and with a copy
of the settlement agreement that was reached but not signed
at mediation.

The district court refused to consider the Board's settlement
offer as evidence, citing the confidentiality provision of the
IDEA. That provision states that "[d]iscussions that occur dur-
ing the mediation process shall be confidential and may not
be used as evidence in any subsequent due process hearing or
civil proceeding." 20 U.S.C. § 1415(e)(2)(G). The court also
noted that the parties had signed a confidentiality agreement
that prohibited them from "revealing to anyone, including a
judge, . . . the content of any discussions which take place
during the mediation process," including "settlement propos-
als made or rejected." Therefore, the court did not look to the
Board's settlement offer to determine whether the parents had
rejected a more favorable settlement offer before the adminis-
trative hearing, and the Board provided no other evidence to
support its claim.

Finally, the court concluded that the parents were a "pre-
vailing party" because, although they lost on the first issue,
they prevailed and received relief on three of the five claims
they raised.* The court therefore granted their motion for
attorneys' fees, awarding them $34,072—rather than the

---

*The district court found that the hearing officer's decision that the
school should not have issued a new IEP in March 2005 raised only a pro-
cedural issue and provided no remedy to J.D.

$112,292 they requested—to account for their limited success. The Board appealed the award to this court.

The question of whether a party was a "prevailing party" under the IDEA is a legal question that we review *de novo*. We review the amount of fees awarded for abuse of discretion. *Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002).

II.

A.

The Board argues on appeal that the attorneys' fees award violated the IDEA because: (1) the Board offered to settle more than ten days before the administrative hearing; (2) the parents rejected this offer; and (3) "the relief finally obtained by the parents [was] not more favorable" than the Board's offer. 20 U.S.C. § 1415(i)(3)(D)(i). The Board is clearly correct on the first two points. But we cannot evaluate whether the settlement offer was more favorable than the hearing officer's decision because, by referencing and incorporating the terms of a confidential mediation into the offer, the Board precluded the offer's consideration as evidence.

The IDEA's confidentiality provision states that "[d]iscussions that occur during the mediation process . . . may not be used as evidence in any subsequent due process hearing or civil proceeding." *Id.* § 1415(e)(2)(G). The Board's settlement offer explicitly referred to the mediation discussions by offering to settle "on the terms and conditions set forth in the settlement agreement reached but not signed at the mediation session." By referring to the mediation in the settlement offer, the Board almost guaranteed that the mediation discussions would become part of a later civil proceeding: the dispute over attorneys' fees. And the plain language of the IDEA prohibits the use of mediation discussions in this way. *See id.*

Nevertheless, the Board argues that the settlement offer did not violate the confidentiality provision because the "offer to settle was not part of the mediation, but was made after mediation had concluded." But the timing of the offer is immaterial under the statutory language. As the district court noted, the Board cannot "circumvent the confidentiality requirements" by referring to the mediation in its offer and introducing that document into a civil proceeding.

The Board also argues that the district court's interpretation of the confidentiality provision would prevent parties from ever offering to settle on terms discussed at meditation. For example, the Board suggests that if parties discussed settling for $10,000 at mediation, but did not reach agreement, the defendant could not offer to settle at a later date for $10,000 without violating the confidentiality provision. But this argument is unpersuasive: the defendant in the hypothetical could comply with the statutory provision by offering to settle for the same amount but not referring to the mediation in its settlement offer. And here, the Board could have offered to settle with the parents on the same terms discussed at mediation without referring to the mediation. Nowhere in its briefs or at oral argument did the Board provide any reason for introducing the mediation into the settlement offer in the manner that it did. And although the Board points to a paucity of case law on this issue, that is likely because other boards of education have respected the statutory language and not violated the confidentiality provision in this way.

Finally, we note that Congress intended to encourage mediation under the IDEA. The statute requires state and local education agencies to establish mediation procedures, to maintain a list of qualified mediators, and to pay for mediation costs. 20 U.S.C. § 1415(e). And the IDEA emphasizes the confidentiality of mediations not only by requiring that all mediation discussions remain confidential, *see id.* § 1415(e)(2)(G), but also by requiring parties that reach a resolution through mediation to "execute a legally binding agree-

ment" to reiterate that "all discussions that occurred during the mediation process shall be confidential," *id.* § 1415(e)(2)(F); *see also Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Smith*, 561 F. Supp. 2d 74, 81 (D.D.C. 2008) (recognizing that "Congress created a markedly distinct vehicle, the mediation process, for formal settlement discussions").

These provisions let mediations stand free and clear of later proceedings, and ensure that mediation discussions will not be chilled by the threat of disclosure at some later date. Enforcing the confidentiality provision is therefore critical to ensuring that parties trust the integrity of the mediation process and remain willing to engage in it. *See, e.g.*, Ellen E. Deason, *Enforcing Mediated Settlement Agreements: Contract Law Collides with Confidentiality*, 35 U.C. Davis L. Rev. 33, 78 (Nov. 2001) ("A party that participates in mediation under a court's confidentiality rules is very likely to feel betrayed by the court if the mediation is later probed in search of an alleged agreement."). For these reasons, we affirm the district court's refusal to consider the settlement offer in reaching its decision. Further, because the IDEA prohibits disclosure of the mediation terms, we do not need to consider the force of the parties' contract provision, which also provided that mediation discussions would be confidential.

## B.

Next, the Board argues that the district court erred in awarding attorneys' fees because the parents were not a "prevailing party" under the IDEA. 20 U.S.C. § 1415(i)(3)(B)(i)(I). The Board maintains that the parents lost on a significant issue—whether the March 2005 IEP was appropriate—and prevailed on several minor issues only. Specifically, the Board argues that the dispute over the level of individual instruction in the March 2005 IEP was the most important issue in the proceeding, and that J.D.'s father testified that the parents filed the due process claim primarily to

address this issue. Therefore, the Board argues, the parents did not "substantially prevail" and attorneys' fees were improper.

This argument lacks merit. It is true of course that federal prevailing party fee-shifting statutes are subject to strict standards. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 & n.4 (2001) (noting that "prevailing party" is a "legal term of art" to be interpreted consistently across federal fee-shifting statutes). As the Supreme Court noted in *Buckhannon*, an award of attorneys' fees requires a "'material alteration of the legal relationship of the parties.'" *Id.* at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)); *see also Combs v. Sch. Bd. of Rockingham County*, 15 F.3d 357, 360 (4th Cir. 1994). This alteration may be accomplished either through "enforceable judgments on the merits [or] court-ordered consent decrees." *Buckhannon*, 532 U.S. at 604.

Therefore, a party need not prevail on every issue or even the most "central" issue in a proceeding to be considered a "prevailing party." *Tex. State Teachers Ass'n*, 489 U.S. at 790-92. The Court rejected a "central issue" test in part because it would "spawn a second litigation of significant dimension" as courts attempted to distinguish "'central' [from] 'tangential' issues in the lawsuit." *Id.* at 791. These cases make clear that to merit attorneys' fees under the IDEA, a plaintiff does not need to prove that he "substantially prevailed," as the Board suggests. Rather, "obtaining judicially sanctioned and enforceable final relief on some claims is sufficient." *G. ex rel. Ssgt R.G. v. Fort Bragg Dependent Schs.*, 324 F.3d 240, 255 (4th Cir. 2003).

Applying these principles to this case, it is clear that the parents were a "prevailing party." The hearing officer ordered the Board to provide additional evaluations to J.D., to hold another IEP meeting using an independent facilitator, and,

most importantly, to provide over thirteen hours of speech and language therapy. This case is therefore similar to *Fort Bragg Dependent Schools*, where we reviewed a district court decision rejecting the plaintiff's claim for more individual instruction but awarding him education reimbursement expenses of over $11,000. *Id.* at 254-55. We held that, despite losing on a central claim, the plaintiff was a "prevailing party" under the IDEA because he had received an "enforceable legal judgment." *Id.* at 255. We reach the same conclusion here: receiving legal relief from the hearing officer brought the parents across the statutory "threshold to a fee award of some kind." *Tex. State Teachers Ass'n*, 489 U.S. at 792.

Once this threshold was crossed, the district court had discretion to determine the amount of the award. *See id.* at 789-90; *Fort Bragg Dependent Schs.*, 324 F.3d at 255 n.20. In determining a reasonable amount of attorneys' fees, courts should look not only to customary hourly rates but also to "results obtained," especially where a plaintiff has "succeeded on only some of his claims for relief." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal quotation omitted); *see also Trimper v. City of Norfolk*, 58 F.3d 68 (4th Cir. 1995). The district court engaged in exactly this inquiry. It applied the customary rate for attorneys in the community, which it found to be $250 per hour. The court then adjusted the award downward to account for the parents' limited success. It noted that the parents had prevailed on several of the claims and "received some of the relief sought," but had not prevailed on their most significant claim contesting the adequacy of the March 2005 IEP. The court therefore awarded the parents $34,072 of the $112,292 they requested.

In *Hensley*, the Supreme Court noted that "[t]here is no precise rule or formula" for determining the amount of attorneys' fees, and that district courts "necessarily [have] discretion" in such matters. 461 U.S. at 436-37. Here, the district court did not grant most of the amount requested by the parents, but took care to examine the limited relief they did receive.

Therefore, we find no basis for concluding that the award amounted to an abuse of discretion.

## III.

In sum, the Board's assignments of error are without merit. We find no error of law and no abuse of discretion in the district court's resolution of the matter. The judgment is accordingly

*AFFIRMED*.