**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4125**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

DEXTER TYSON,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Catherine C. Blake, District Judge. (1:03-cr-00056-CCB)

Submitted:  January 20, 2012      Decided:  February 1, 2012

Before WILKINSON, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Kenneth W. Ravenell, Milin Chun, MURPHY & FALCON, PA, Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Christopher J. Romano, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dexter Tyson appeals his convictions entered after a jury trial for conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and five kilograms or more of cocaine (Count I), possession with intent to distribute 50 grams or more of cocaine base (Count II), possession with intent to distribute cocaine (Count III), possession with intent to distribute cocaine (Count IV), possession of a firearm in furtherance of a drug trafficking crime (Count V), possession of a firearm with an obliterated serial number (Count VI), felon in possession of a firearm (Count VII), and felon in possession of ammunition (Count VIII). We affirm.

I.

Tyson initially went to trial on June 21, 2004. The jury convicted him of Counts I, II, III, and IV. The district court declared a mistrial on the remaining charges. Prior to sentencing, Tyson filed a motion for a new trial based upon the perjurious testimony of a Government witness, Jimmie Troutman. The Government acknowledged the perjury and agreed to a new trial.

Prior to Tyson's second trial, the Government filed a motion in limine seeking to exclude any reference, testimony or

2

evidence regarding Troutman's testimony at the first trial or the fact that Tyson had been previously convicted but had received a new trial. Tyson opposed the motion, arguing that the evidence was relevant to show ownership of the drugs and handgun found at the subject apartment. Specifically, the evidence showed that Tyson's co-conspirator Rennie Price asked Troutman to perjure himself and supplied him with false information about Tyson. Tyson argues that Price did this to protect himself and his girlfriend Agrario Estevez and to punish Tyson for refusing to take responsibility for all the drugs. Tyson avers that, if the drugs did in fact belong to Tyson, Price would not have had to frame him and the fact that Price did frame him tends to show that, in fact, the drugs belonged to Price and Estevez and not to Tyson.

The district court granted the motion in limine, reasoning that the Troutman evidence was not probative of possession and, even if it was, the evidence was unfairly prejudicial. We review a district court's evidentiary rulings for abuse of discretion.[1] United States v. Blake, 571 F.3d 331,

---

[1] Tyson contends that the proper standard of review for a determination that the evidence was not relevant to the crimes charged is de novo, as it is a question of law. Tyson is mistaken. See United States v. Miller, 626 F.3d 682, 688 & n.4 (2d Cir. 2010) (determination that evidence was irrelevant reviewed for abuse of discretion), cert. denied, 132 S. Ct. 379 (2011). Tyson's citations do not support his conclusion. For (Continued)

3

350 (4th Cir. 2009), cert. denied, 130 S. Ct. 1104 (2010). A district court abuses its discretion when its decision to exclude evidence was arbitrary and irrational. United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403; Buckley v. Mukasey, 538 F.3d 306, 318 (4th Cir. 2008). Unfair prejudice occurs when "there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006) (internal quotation marks, citation, and alteration omitted).

---

example, he cites United States v. Torniero, 735 F.2d 725, 730 (2d Cir. 1984), for the proposition that relevance is a question of law. While the court does use this language, the court does not conclude that de novo is the proper standard of review; instead, the court clearly states that the "court's discretion in ruling on relevance, and in assessing potential prejudice, is broad." Id.

We review a district court's decision to exclude evidence under Fed. R. Evid. 403 and 401 "under a broadly deferential standard, and will not overturn a district court's ruling in the absence of the most extraordinary circumstances in which the court's discretion has been plainly abused." United States v. Hassouneh, 199 F.3d 175, 183 (4th Cir. 2000). In addition, a district court's evidentiary rulings are subject to review for harmless error under Fed. R. Crim. P. 52. United States v. Abu Ali, 528 F.3d 210, 231 (4th Cir. 2008). Evidence that is erroneously excluded will be deemed harmless if the reviewing court is able to "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946); United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997).

At Tyson's first trial, Troutman testified that he purchased narcotics from Tyson at his apartment, where he saw tools of the drug trade present. He also testified that Tyson told him he kept a handgun in the house. He stated he saw three kilograms of cocaine present and that he and Tyson cooked the cocaine into crack at the apartment. Notably, however, Troutman's testimony did not exonerate Price and Estevez, who were present in the apartment with the drugs when the police

5

executed the search warrant; in fact, Troutman testified (falsely) that he did not know Price.

We conclude that the district court's ruling was neither arbitrary nor irrational. The relevance of the evidence was tangential, requiring assumptions regarding Price's state of mind when he arranged for Troutman's perjury. Moreover, since such assumptions were required, the district court reasonably determined that the evidence might be misleading and confusing to the jury and might require exploration of tangential issues. The record simply does not support a finding of extraordinary circumstances requiring reversal. Moreover, given the evidence at trial connecting Tyson to the apartment,[2] it is unlikely that the excluded evidence would have altered the jury's decision. As such, Tyson's claim is without merit.

---

[2] Tyson was observed by detectives coming and going from the subject apartment, including the day the search warrant was executed; the lease agreement was in Tyson's name; the master bedroom (where drugs and money were found) contained documents with Tyson's name on them, pictures of Tyson, a safe with additional Tyson documents; and two of Tyson's credit cards; Tyson's parole officer supported the conclusion that he lived at the subject apartment despite his deceptive attempts to show he lived elsewhere; Price's and Estevez's passports, wallets, and clothing were found in the spare bedroom, not the master bedroom; and Tyson admitted his ownership of the money in the forfeiture proceeding.

II.

Next, Tyson asserts that the district court incorrectly denied his motion for a mistrial made after a Government witness improperly testified about Tyson's past arrests and warrants. Specifically, the district court ruled prior to trial that the only prior conviction of Tyson's that could be introduced was a conviction in 1997 arising out of a search and seizure warrant executed in October 1996. Lieutenant Davis of the Anne Arundel County Police Department testified regarding the events in 1996-97. When asked about the execution of the 1996 search warrant, Davis answered that they recognized Tyson at the time because "he was wanted on a couple of warrants." Then, when asked about Tyson's relationship to the place being searched, Davis stated that Tyson "had listed it as an address on previous arrest documents." After denying Tyson's motion for a mistrial, the court gave a cautionary instruction to the jury telling them to "completely disregard any remarks that may have been made about a prior arrest or warrant. . . . That is completely irrelevant."

The denial of a mistrial is reviewed for an abuse of discretion. United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995). To show an abuse of discretion, the defendant must show prejudice. Id. In general, where there is no Government

7

misconduct and a curative instruction is given, a mistrial is not warranted. Id.

Here, assuming that Davis's testimony violated the court's pre-trial ruling, we conclude that the effect was negligible. The references to "arrest" and "warrants" were vague and brief. In addition, the improper evidence was likely cured by the district court's cautionary instructions. Finally, even assuming that the improper evidence influenced the jury, Tyson has failed to show that he suffered prejudice. Given the evidence against Tyson, it is unlikely that this nonspecific testimony, even if considered, would have swayed the jury. Thus, Tyson's motion for a mistrial was properly denied.


III.

At trial, the Government introduced claims filed by Tyson with the DEA for the return of over $55,000 seized on January 9, 2003. In these documents, Tyson claimed that he was the sole owner of the money seized from his apartment and person. The Government argued in closing that there was no legitimate explanation for how Tyson could earn so much money and contended that it was drug proceeds. At trial, Tyson objected to the admission of the DEA claims on grounds of hearsay and relevance.

8

On appeal, Tyson for the first time argues that admission of the DEA claims violated his Fifth Amendment rights because he was forced to either surrender his due process rights to a meaningful forfeiture hearing or his right to remain silent. Tyson claims that his position is supported by an extension of the Supreme Court's decision in Simmons v. United States, 390 U.S. 377 (1968), that statements made by criminal defendants in suppression hearings could not be used against them in a criminal prosecution. Id. at 394. Because this claim was not raised below, the parties agree that Tyson must show plain error.

First, assuming without deciding that there was error, Tyson cannot show that the error was plain. Tyson admits that we have not yet addressed this particular issue. See also Brown v. Berghuis, 638 F. Supp. 2d 795, 816 (E.D. Mich. 2009) (collecting cases and noting that the body of law on this issue is "murky"). Thus, any error was not clear and obvious. See United States v. Olano, 507 U.S. 725, 734 (1993) (standard of review). Further, Tyson cannot show that the error affected his substantial rights, given that exclusion of this evidence would not have changed the outcome of the proceedings. See id. As discussed above, there was a wealth of evidence tying Tyson to the apartment, and by extension, the cash and the drugs. Accordingly, Tyson has failed to show plain error.

IV.

Tyson asserts that he was prejudiced by joinder of the charges against him because he wished to testify regarding Count IV, but wished to remain silent with regard to the remaining counts. Federal Rule of Criminal Procedure 8 provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Federal Rule of Criminal Procedure 14 provides, however, that "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts." Under Rule 14, "[t]he party seeking severance bears the burden of demonstrating a strong showing of prejudice." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008) (internal quotations omitted).

We previously articulated the legal principles governing this argument as follows:

> [B]ecause of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma; whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would

10

result from testifying on the other. Obviously no such dilemma exists where the balance of risk and advantage in respect of testifying is substantially the same as to each count. Thus . . . no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984); see United States v. Jamar, 561 F.2d 1103, 1108 n. 9 (4th Cir. 1977) (indicating that "a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interests favoring joinder").

Here, Tyson indicated that he "may wish" to testify regarding conversations between himself and a Detective, requesting that Tyson bring drugs to the police station as part of his cooperation (Count IV). However, he feared that, by taking the stand, he would implicate himself on the other counts through cross-examination. The district court denied the motion to sever, reasoning that Tyson had not made a sufficient showing

11

of prejudice because the evidence supporting Count IV would be admissible in a trial based upon only the other counts and vice versa. Thus, severance would not insulate Tyson from cross-examination about all the evidence in the case in both trials.

Because Tyson's desire to testify was not definite and because the evidence supporting each of the counts would be mutually admissible in separate trials,[3] Tyson's allegations of prejudice are undermined. Furthermore, all the counts were logically related because the conspiracy covered the entire month of January. See United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008) (affirming denial of severance because "[t]rying the . . . charge[s] separately would have led to significant inconvenience for the government and its witnesses, and required a needless duplication of judicial effort in light of the legal, factual, and logistical relationship between the charges"). For these reasons, the district court did not abuse its discretion in balancing the competing interests in the case and denying the motion for severance.

---

[3] In his reply brief, Tyson assumes that the search of his apartment would be admissible in a trial regarding the later search incident to his arrest (Count IV), but challenges whether the arrest incident was admissible in a trial relating only to the search (remaining counts). However, the fact that Tyson was in possession of a quantity of crack cocaine within a couple weeks of the search of his apartment is relevant on the issues of his knowledge and intent and any absence of mistake regarding the contents of his apartment. Fed. R. Evid. 404(b).

12

Finally, Tyson asserts that the district court erred in failing to hold a hearing on his allegations that Detective Caputo included false statements in his affidavit in support of the search warrant.  The alleged falsities are as follows:  (1) stating that he surveilled Tyson on dates when Tyson was actually incarcerated; (2) stating that he conducted a criminal history check on Tyson on December 6, 2002, when he did not actually conduct the check until December 18;[4] (3) listing charges against Tyson and Pariag without listing the dispositions of these charges;[5] and (4) omitting information that Tyson's 1996 arrest involved only 3.5 grams of cocaine.[6]

Caputo's affidavit was dated January 2, 2003.  The affidavit described surveillance conducted on Tyson, his brother (Brent Pariag), and Tyson's apartment during the month of December 2002 based upon a tip from a confidential informant. Caputo alleges that he saw Tyson conducting what "appeared to be

---

[4] The date of the check is not listed in the affidavit. Instead, this discrepancy arose at the suppression hearing.

[5] While not all of the charges ended with convictions, some did.

[6] Also seized from Tyson at the time of that arrest was $28,000 in cash, the equivalent cost of a kilogram of cocaine.

controlled dangerous substance related" actions on December 2.[7] Then, Caputo asserted that, sometime after December 17, he saw Tyson and Pariag again conducting what appeared to be drug activities. A drug detection dog alerted on Pariag's van parked outside of Tyson's apartment, and the officers seized drug packaging from the garbage left by someone who had been traveling with Pariag which yielded a positive test for cocaine. Caputo stated that he conducted background checks on Tyson and Pariag and determined that they each had been charged with numerous drug and violent offenses and that Tyson listed the subject apartment as his address.

For a criminal defendant to be entitled to a Franks[8] hearing, this court has required a "dual showing[,] . . . which incorporates both a subjective and an objective threshold component." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). First, the defendant must show that the affiant to a search warrant made a false statement in the warrant affidavit, "knowingly and intentionally, or with reckless disregard for the truth." Franks, 438 U.S. at 155-56. Next, the defendant has the burden to show that the false statement

---

[7] Tyson was incarcerated from sometime in November until December 9.

[8] Franks v. Delaware, 438 U.S. 154 (1978).

14

itself was necessary to a determination of probable cause, and if probable cause still exists absent the false statement, then no Franks hearing is required. Id. at 156.

The defendant carries a heavy burden in showing that a Franks hearing is necessary. United States v. Jeffus, 22 F.3d 554, 558 (4th Cir. 1994). Additionally, the "showing 'must be more than conclusory' and must be accompanied by a detailed offer of proof." Colkley, 899 F.2d at 300. Accordingly, allegations of such misconduct must be supported through affidavits and sworn witness statements, or an explanation of why they cannot be provided. Franks, 438 U.S. at 171. We review de novo a district court determination that a defendant has not made a proper showing to trigger a Franks hearing. United States v. Tate, 524 F.3d 449, 455 (4th Cir. 2008).

We conclude that Tyson has not established that he was entitled to a Franks hearing. Tyson does not offer any evidence to prove that Caputo intentionally stated that he observed Tyson when in fact he did not or intentionally changed the date he conducted the record search. Instead, the incorrect dates appear to be nothing more than misstatements or mistakes. Moreover, even assuming that Caputo's affidavit was intentionally false and misleading, probable cause would still have existed to support the search warrant even without the alleged misstatements. See Illinois v. Gates, 462 U.S. 213, 238

15

(1983) (holding that, when viewing the totality of the circumstances, the issuing court must believe that there is "a fair probability that contraband or evidence of a crime will be found in a particular place"). Accordingly, we find no reversible error in the district court's failure to order a <u>Franks</u> hearing.

Based on the foregoing, we affirm Tyson's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>