**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-1322**

---

CITIES4LIFE, INC., a/k/a Cities4Life Charlotte; DANIEL PARKS; KATHERINE A. HELDRETH, individually and on behalf of her minor son, N.H.; ELIJAH BOYER; PATRICK COURTNEY,

        Plaintiffs − Appellees,

    v.

CITY OF CHARLOTTE,

        Defendant – Appellant,

    and

JENNIFER ROBERTS, in her official capacity as Mayor of Charlotte; MARCUS D. JONES, in his official capacity as City Manager of Charlotte; BEN KRISE, individually and in his official capacity as the City of Charlotte Code Enforcement Division Manager; MANDY EDWARDS, individually and in her official capacity as a City of Charlotte Code Enforcement Inspector; MARK FOWLER, individually and in his official capacity as a City of Charlotte Code Enforcement Inspector; KIMBERLY T. SAUER, individually and in her official capacity as a City of Charlotte N&BS Area Supervisor; DOES, 1-3 individually and in their official capacities as City of Charlotte employees; CITY OF CHARLOTTE DEPARTMENT OF HOUSING AND NEIGHBORHOOD SERVICES; CITY OF CHARLOTTE DIVISION OF CODE ENFORCEMENT,

        Defendants.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:17-cv-00670-KDB-DSC)

---

Argued:  September 14, 2022                        Decided:  November 1, 2022

Before NIEMEYER, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

**ARGUED:**  Daniel E. Peterson, PARKER, POE, ADAMS & BERNSTEIN, LLP, Charlotte, North Carolina, for Appellant.  Stephen M. Crampton, THOMAS MORE SOCIETY, Chicago, Illinois, for Appellees.  **ON BRIEF:**  Benjamin R. Sullivan, Jr., OFFICE OF THE CITY ATTORNEY, Charlotte, North Carolina, for Appellant. B. Tyler Brooks, LAW OFFICE OF B. TYLER BROOKS, PLLC, Cary, North Carolina, for Appellees.

DIAZ, Circuit Judge:

The City of Charlotte appeals the district court's order granting attorney's fees and costs to Plaintiffs, an antiabortion organization and four of its members, following a consent judgment. The district court held that Plaintiffs were "prevailing parties" under 42 U.S.C. § 1988. On appeal, Plaintiffs also urge us to reconsider the district court's fee award. Finding no error, we affirm.

I.

A.

A Preferred Women's Health Center, the clinic that performs the most abortions in the southeastern United States, sits on Latrobe Drive in Charlotte. Groups gather there every Saturday to show their support and opposition to the Center. Members of Cities4Life, an antiabortion organization, often demonstrate there and attempt to distribute literature to visitors.

Demonstrators "sometimes get into heated exchanges" at the Center, at least one of which involved a firearm. J.A. 227. Because the police perceived "public safety risks" at the Center, they "began implementing incremental crowd control measures" in late 2016. J.A. 228. They first issued verbal warnings, then transitioned to roping off sections of sidewalk. When neither proved effective, the police set up physical barricades. The police warned members of Cities4Life that they would be violating the City's Picketing Ordinance if they stepped off the sidewalk to try to distribute literature to pedestrians and vehicles. That ordinance reads:

3

> Picketing shall not disrupt, block, obstruct or interfere with pedestrian or vehicular traffic or the free passage of pedestrian or vehicular traffic into any driveway, pedestrian entrance, or other access to buildings, which abut the public sidewalks.

Charlotte, N.C. Code of Ordinances § 19-303(c). Twice in August 2018, the police charged a Cities4Life member with a misdemeanor for distributing literature in violation of the Picketing Ordinance.

Cities4Life and four of its members sued the City of Charlotte in 2017, then amended their complaint in 2019 to add a challenge to the Picketing Ordinance. Plaintiffs claimed the Picketing Ordinance violated the First and Fourteenth Amendments of the United States Constitution, Article I of the North Carolina Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). They requested declaratory, nominal, compensatory, and injunctive relief, along with attorney's fees and costs.

B.

Seventeen days before trial, the City made a settlement offer. The City agreed to "accommodate the plaintiffs' desire to distribute literature to vehicles entering or leaving the Latrobe Drive clinic" by allowing Plaintiffs to "step into the clinic driveway to distribute literature" to willing occupants. J.A. 657. This permission would be subject to certain conditions. Leafleteers would have to wait on the sidewalk until a vehicle came to a stop before entering the driveway or road. The barricades would remain, though they would be arranged to provide space for Plaintiffs to enter the driveway from the sidewalk. The police would retain the ability to suspend entry to the driveway in unusually hazardous

4

times.   And the City would issue initial warnings if Plaintiffs violated any of these conditions, rather than automatically issuing citations or charges as it had in the past.

Plaintiffs accepted the settlement offer, and the district court entered a consent judgment adopting it.   The consent judgment made no determination about attorney's fees—a sticking point in settlement negotiations.   The court also clarified that in entering the consent judgment, it was "not making any rulings or determinations about the merits of any of the parties' claims, defenses, allegations, or arguments."   J.A. 529.

Soon after, Plaintiffs moved for attorney's fees and costs.   The City opposed the motion, arguing Plaintiffs weren't prevailing parties under the federal civil-rights fee-shifting statute, 42 U.S.C. § 1988.

The district court awarded Plaintiffs $33,701.88 in attorney's fees and $3,086.60 in costs, holding that the consent judgment made Plaintiffs the prevailing parties. *Cities4Life, Inc. v. City of Charlotte*, No. 17-cv-670, 2021 WL 724609, at *6, 10 (W.D.N.C. Feb. 24, 2021).   To calculate the fee amount, the court first found that multiplying the attorneys' reasonable hourly rates by their hours worked resulted in over $150,000 in fees. *Id*. at *8. It then deducted 10% due to overlap with the attorneys' work on previously resolved claims (for which a separate settlement disallowed fees). *Id.* at *8–9.   And from that adjusted figure it deducted another 75% because "Plaintiffs did not receive any of the declaratory judgments they requested, nor did they receive any nominal or compensatory damages." *Id*. at *9.

The City timely appealed the fee award.   But Plaintiffs didn't cross-appeal.

5

II.

A.

The City contends that the consent judgment didn't confer prevailing-party status on Plaintiffs because it was only a "practical resolution" that "did not constitute Plaintiffs prevailing on the merits and did not establish any fault by the City." Appellant's Br. at 16. Since 42 U.S.C. § 1988(b) authorizes fee shifting only when a civil-rights plaintiff succeeds on the merits of their claims, the City argues, the district court erred in awarding Plaintiffs any fees. We do not agree.

"Prevailing party" is a legal term of art that we interpret consistently across all federal fee-shifting statutes. *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002). We review de novo a district court's determination of whether someone is a "prevailing party." *McAfee v. Boczar*, 738 F.3d 81, 87–88 (4th Cir. 2013).

Under § 1988(b), a court may (in its discretion) award reasonable attorney's fees to a prevailing party in any action to enforce a provision of § 1983 or RLUIPA. A civil-rights plaintiff "'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). We have framed the inquiry as a four-part test, requiring a plaintiff seeking fees to "obtain (1) a judgment, consent decree, or similar order, (2) that grants him some relief on the merits, (3) that materially alters the legal relationship between him and the defendant, and (4) that is enforceable by the court." *Ge v. U.S. Citizenship & Immigr. Servs.*, 20 F.4th 147, 153 (4th Cir. 2021).

6

The consent judgment here easily passes that test.  The City doesn't dispute that the consent decree is enforceable by the court, and that it alters the legal relationship between Plaintiffs and the City.  As the district court explained, the City's enforcement of the Picketing Ordinance previously "resulted in a complete ban" on "pedestrian vehicular approaches."  2021 WL 724609, at *5.  Now, Plaintiffs may approach vehicles if they comply with certain safety requirements.  *Id.*  The consent judgment also requires the City to leave openings in its barriers to allow Plaintiffs to approach vehicles and prescribes that the police will issue only warnings for initial violations.  *Id.*  And, "if Plaintiffs believe that the City violates their rights in the future, they can pursue a contempt action rather than start from scratch with a new lawsuit."  *Id.* at *6.  In all, the consent judgment permits Plaintiffs to engage in an activity from which they were previously prohibited and obligates the City to accommodate them.

The City contends that the consent decree doesn't grant Plaintiffs "some relief on the merits" under the second *Ge* prong because it doesn't "establish that the defendant did, in fact, violate the plaintiff's rights."  Appellant's Br. at 20.  But "[n]othing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."  *Maher v. Gagne*, 448 U.S. 122, 129 (1980).  This is because consent decrees entail a special degree of "judicial approval and oversight," even if they "do[] not always include an admission of liability by the defendant."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 & n.7 (2001); *see also Smyth*, 282 F.3d at 281 (noting that while generally "a determination of 'legal merit' is necessary," a consent decree is a

7

"special case"). So a consent decree need not declare that a defendant violated a plaintiff's constitutional rights or even "contradict the defendant's denial of liability." Reply Br. at 16.

It is enough that the consent decree, as a practical matter, provide a party with some of the relief sought in the complaint. *Maher*, 448 U.S. at 127–130. And that is what we have here.

Plaintiffs sought to "cross the barricades to speak with abortion-minded women or provide them literature," but the Picketing Ordinance prevented them from doing so. J.A. 196. The consent decree lifted that restriction, although with some caveats. Contrary to the City's assertion at oral argument, this was no "technical victory"—Plaintiffs' previous inability to distribute literature to vehicles at the Center was central to their claim. *See Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (determining plaintiff prevailed where "[b]efore the ruling, the police intended to stop [him] from protesting with his signs; after the ruling, the police could not prevent him from demonstrating in that manner"). Thus, we hold that the consent judgment here granted Plaintiffs "some relief on the merits" sufficient to establish this prerequisite for fee shifting.

The City raises several other arguments, none of which are availing. It's irrelevant whether, as counsel for the City suggested at oral argument, the consent judgment was "at best for the plaintiff a legal draw." That's because a civil-rights plaintiff need not prevail on every claim or obtain all relief sought to receive attorney's fees. *J.D. ex rel. Davis v. Kanawha Cnty. Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009). As the district court correctly understood, a court may consider the extent of a plaintiff's success on their claims

8

in calculating the fee award—but a mixed outcome doesn't foreclose a fee award entirely. "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar*, 506 U.S. at 114.

It also makes no difference that, as the City argues, Plaintiffs must comply with certain safety requirements under the consent judgment. The City identifies no case suggesting that the imposition of "antecedent" conditions negates the benefits a plaintiff receives in a consent judgment. And even if such conditions could be considered a "loss" for Plaintiffs, again, they need not succeed on every aspect of every claim to recover fees. *Davis*, 571 F.3d at 387.

Next, the City points to the consent judgment's disclaimer that it made no ruling on the merits. But it's "customary" for consent decrees to "not purport to adjudicate [] statutory or constitutional claims." *Maher*, 448 U.S. at 127 n.8; *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 154 (4th Cir. 1995) ("The central characteristic of a consent decree is that it does not involve contest or decision on the merits." (cleaned up)). A standard disclaimer doesn't defeat Plaintiffs' ability to recover fees.

At oral argument, counsel for the City urged for the first time that the consent judgment's dismissal of all claims with prejudice was determinative because dismissal with prejudice usually constitutes a ruling for the defendant. We need not address arguments raised for the first time at oral argument. *W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389 (4th Cir. 2011). But the argument fails all the same.

Consent judgments "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *Consumer Fin. Prot. Bureau v. Klopp*,

9

957 F.3d 454, 463 (4th Cir. 2020) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  And parties entering a consent judgment will often want to ward off future litigation, so dismissal with prejudice is a probable result.  But that alone is a poor indicator of who has "prevailed."

Finally, the City suggests that the district court's reading of § 1988 will discourage beneficial settlements.  But the district court faithfully applied the fee-shifting provision of § 1988.  So the City's beef is with Congress as the statute's author, not the courts.  In any event, our decision today doesn't discourage settlements.  Indeed, the City negotiated an earlier settlement in the case that didn't allow for a fee award.  2021 WL 724609, at *8.  That the City couldn't repeat its success says nothing about § 1988's deterrent effect on settlements generally.

In sum, because the consent judgment conferred prevailing-party status on Plaintiffs, the district court was free to award them fees and costs.

## B.

Plaintiffs push their luck, however, in asking us to review the amount of the district court's fee award.  "Absent a cross-appeal, an appellee . . . may not attack [a judgment] with a view [] to enlarging his own rights thereunder."  *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) (cleaned up).  Plaintiffs seek to do just that.  But they didn't cross-appeal, so we won't consider the issue.

*AFFIRMED*

10