**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHARD W. GOLDSTEIN,
            *Plaintiff-Appellant,*

v.

HARRY I. MOATZ, Director, Office of
Enrollment and Discipline;
NICHOLAS GODICI,
            *Defendants-Appellees,*

            and

LAWRENCE ANDERSON; JAMES E.
ROGAN, Under Secretary of
Commerce for Intellectual Property
and Director of USPTO; JAMES A.
TOUPIN; DAVID M. PUROL, USPTO,
Patent Examiner; UNITED STATES OF
AMERICA; JOHN DOES, 1-5,
            *Defendants.*

No. 05-1144

RICHARD W. GOLDSTEIN,
            *Plaintiff-Appellant,*

v.

HARRY I. MOATZ, Director, Office of
Enrollment and Discipline;
NICHOLAS GODICI,
            *Defendants-Appellees,*

and

LAWRENCE ANDERSON; JAMES E.
ROGAN, Under Secretary of
Commerce for Intellectual Property
and Director of USPTO; JAMES A.
TOUPIN; DAVID M. PUROL, USPTO,
Patent Examiner; UNITED STATES OF
AMERICA; JOHN DOES, 1-5,
            *Defendants.*

No. 05-1399

AMERICAN CIVIL LIBERTIES UNION OF
VIRGINIA, INCORPORATED,
            *Amicus Supporting Appellant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-02-1734-A)

Argued: February 1, 2006

Decided: April 20, 2006

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

Affirmed in part and dismissed in part by published opinion. Judge King wrote the opinion, in which Judge Williams and Judge Motz joined.

---

### COUNSEL

**ARGUED:** Victor Michael Glasberg, Alexandria, Virginia, for Appellant. Steven E. Gordon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** Paul Gowder, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellees. Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC., Richmond, Virginia, for Amicus Supporting Appellant.

---

### OPINION

KING, Circuit Judge:

Appellant Richard W. Goldstein, a patent lawyer, appeals the district court's dismissal, on mootness grounds, of his civil action against certain officials in the Patent and Trademark Office (the "PTO"), and the PTO's Office of Enrollment and Discipline (the "OED"). He also appeals the court's denial of his application, under the Equal Access to Justice Act (the "EAJA"), for an award of attorneys' fees and costs. As explained below, we dismiss Goldstein's appeal of the mootness order as moot and affirm the district court's denial of his attorneys' fees and costs application.

I.

A.

The relevant factual background of this dispute is more fully detailed in our earlier decision in this matter. *See Goldstein v. Moatz*, 364 F.3d 205, 207-10 (4th Cir. 2004). This proceeding involves the

OED's investigation of Goldstein, which was apparently undertaken after complaints were received from some of his clients. Pursuant to the PTO's regulations, its OED Director is responsible for investigating allegations of misconduct by practitioners in the patent bar. *See* 37 C.F.R. § 10.131(a). When the Director conducts a disciplinary investigation, a practitioner is required to report and reveal to the Director any unprivileged knowledge of disciplinary rule violations. *Id.* §§ 10.24(a), 10.131(b). If, after investigation, the Director believes that a disciplinary violation has occurred, he is obliged to convene the PTO's Committee on Discipline (the "Committee"). *Id.* § 10.132(a). The Committee is composed of at least three PTO staff attorneys appointed by the Commissioner for Patents, *id.* § 10.4(a), and it is vested with the power and authority to decide the issue of probable cause on whether a disciplinary rule has been violated, *id.* § 10.4(b). If the Committee makes a probable cause finding, the Director initiates a formal disciplinary proceeding by the filing of a complaint against the practitioner and by referring the matter to an administrative law judge. *Id.* § 10.132(b), (c). Such a disciplinary proceeding may result in the issuance of a reprimand, or the suspension or expulsion of the practitioner from the patent bar (or, presumably, the complaint's dismissal). *See id.* § 10.132(b).

Between December 5, 2000, and November 20, 2001, the OED served Goldstein with a total of six Requirements for Information ("RFIs"), concerning four of his clients.[1] The OED advised Goldstein in each instance that his failure to comply with the RFIs would constitute a violation of the PTO's disciplinary rules requiring compliance with OED investigations. In all, the six RFIs required Goldstein to respond to more than 300 inquiries.

On December 20, 2001 — a year after the first RFI was propounded on Goldstein and a month after being served with the last

---

[1]The regulation authorizing issuance of RFIs, entitled "Requirements for information," provides that: "In the course of examining or treating a matter in a pending or abandoned application . . . , in a patent, or in a reexamination proceeding, the examiner or other [PTO] employee may require the submission . . . of such information as may be reasonably necessary to properly examine or treat the matter . . . ." 37 C.F.R. § 1.105(a)(1).

RFI — Goldstein petitioned the PTO for relief, seeking to have the Commissioner supervise the OED with respect to the RFIs. His petition was denied by the PTO's General Counsel on April 12, 2002. The General Counsel's letter to Goldstein asserted that the OED's use of RFIs was neither excessive nor an abuse of discretion, and it notified Goldstein that the decision embodied in the letter was not a final agency action from which he could seek review. The General Counsel also instructed Goldstein to respond to the outstanding RFIs within thirty days, a directive with which Goldstein complied.

On November 26, 2002, Goldstein instituted this lawsuit in the Eastern District of Virginia. By his complaint, he alleged claims of constitutional violations and state torts, and sought money damages and a judgment declaring that the PTO and the OED had violated his due process rights in propounding the RFIs. On February 21, 2003, the district court dismissed his complaint, as relevant here, on grounds of absolute immunity. Without reaching the merits of Goldstein's constitutional claims, we vacated in part and remanded for further proceedings, concluding, as relevant here, that the OED officers who had been sued were not entitled to absolute immunity. *See Goldstein*, 364 F.3d at 211-19. At the time of the appeal, the OED had neither initiated disciplinary proceedings against Goldstein nor informed him of whether its investigation was concluded.

### B.

On July 2, 2004, after remand, Goldstein filed an Amended Complaint, abandoning his claims for damages and requesting, for the first time, injunctive relief. He also asserted a claim for $1000 in statutory damages under the Privacy Act. *See* 5 U.S.C. § 552a.[2] In December 2004, after conducting discovery proceedings, the parties unsuccessfully attempted to settle their dispute. The PTO then sought dismissal of the Amended Complaint by the district court on multiple grounds, including mootness, and, in support, filed several declarations by its employees. By its supporting memorandum, the PTO contended that,

---

[2]In his Amended Complaint, Goldstein sued Harry I. Moatz, Director of the OED, and Nicholas P. Godici, PTO Commissioner for Patents, in their official capacities. We include these defendants, the appellees herein, in our collective references to "the PTO."

in light of the declarations it submitted to the court, the entire dispute was moot. Goldstein countered with his own motion for summary judgment.

On January 7, 2005, following a hearing at which oral argument was presented, the district court entered an order denying Goldstein's motion for summary judgment and dismissing Goldstein's complaint as moot (the "Mootness Order"). In so ruling, the court observed that its decision was "[b]ased on the parties' representations." Mootness Order at 1. Goldstein then appealed the Mootness Order to this Court (Appeal No. 05-1144).

On February 14, 2005, Goldstein applied in the district court for an award of his attorneys' fees and costs under the EAJA, 28 U.S.C. § 2412. His application for such an award was denied by the court's order of March 24, 2005 (the "Fee Order"). In the Fee Order, the court concluded that Goldstein did not qualify for an award of attorneys' fees and costs under the EAJA because he was not a "prevailing party." Fee Order at 2-5. Alternatively, the court concluded that Goldstein was not entitled to such an award because the PTO's position on the RFIs was substantially justified and, in any event, his application for an attorneys' fees and costs award was "entirely unreasonable." *Id.* at 5-6. Goldstein has appealed the Fee Order (Appeal No. 05-1399). The two appeals were consolidated for handling in this Court, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

A.

Oral argument was conducted in the two consolidated appeals before this Court on February 1, 2006. Thereafter, on March 2, 2006, the PTO filed a motion to dismiss Appeal No. 05-1144 (the Mootness Order appeal), asserting that, by its letter to Goldstein's counsel of February 27, 2006, the PTO had notified Goldstein of its decision not to "pursue formal disciplinary action against Mr. Goldstein." In response to the PTO's motion, Goldstein has now conceded that, in view of the PTO's letter of February 27, 2006, his claims for declaratory and injunctive relief are moot and that his appeal of the Mootness Order should be dismissed. Accordingly, we grant the PTO's March 2, 2006 motion and dismiss Appeal No. 05-1144 as moot.

B.

In his remaining appeal (No. 05-1399), Goldstein contends that the district court erred in entering the Fee Order, thereby denying his application under the EAJA for an award of attorneys' fees and costs. He maintains that the court should have recognized the existence of a "tactical mooting" exception to the general rule that a party applying for fees and costs must have first secured some court-ordered relief. As explained below, we reject Goldstein's contention and affirm the Fee Order.

We review de novo a district court's determination that an applicant for an award of fees and costs under the EAJA is not a prevailing party. *See Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002). Under the traditional "American Rule," the parties to litigation normally bear their own respective costs, unless an applicable statute expressly provides otherwise. *See Buckhannon Board & Care Home v. W.V. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001); *Smyth*, 282 F.3d at 274. The EAJA creates such a statutory exception to the American Rule, authorizing an award of attorneys' fees and costs to "the prevailing party" in a civil action against the United States, or against its agencies or officials. *See* 28 U.S.C. § 2412.

In its recent *Buckhannon* decision, the Supreme Court explained that a "prevailing party," within the meaning of the EAJA and similar federal fee-shifting statutes, "is one who has been awarded some relief by the court." *See* 532 U.S. at 603. Although the *Buckhannon* case did not specifically involve the EAJA, the Court observed that it has "interpreted . . . fee-shifting provisions consistently." *See id.* at 603 n.4. Because the EAJA shares the "prevailing party" language with the statute at issue in *Buckhannon* (42 U.S.C. § 3613), *see id.* at 601, the *Buckhannon* principles are applicable here. And in *Buckhannon*, the Court instructed the lower courts that only "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604 (internal quotation marks omitted). As we have observed, a consent decree approved and entered by a trial court is sufficient to make the party that obtains relief a "prevailing party" under the fee-shifting statutes, because such a decree "is entered as an [approved] order of the court . . . and is subject to the oversight attendant to the court's authority to enforce its

orders, characteristics not typical of settlement agreements." *Smyth*, 282 F.3d at 281.

In this situation, the district court properly concluded in its Fee Order that Goldstein was not, within the meaning of the EAJA, a "prevailing party." First, the court did not grant Goldstein any relief on the merits of his Amended Complaint, and neither did our earlier appellate decision.[3] Second, Goldstein has never secured a court-ordered consent decree creating a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604 (internal quotation marks omitted); *see also Smyth*, 282 F.3d at 281; *Rice Servs., Ltd. v. United States*, 405 F.3d 1017 (Fed. Cir. 2005) (reversing EAJA fees and costs award premised on order that recognized Government's voluntary concession to requested relief).

Notwithstanding the foregoing legal principles and the underlying facts, Goldstein, with the *amicus curiae*'s support, contends that he should be eligible for an attorneys' fees and costs award under the EAJA because the *Buckhannon* decision does not apply to the "tactical mooting" circumstances that, in his view, occurred here.[4] The Supreme Court in *Buckhannon*, however, did not leave the door ajar for an inferior court to engraft a broad tactical mooting exception onto its ruling. Rather, the Court concluded that tactical mooting concerns are simply insufficient to overcome the statutory requirement that a

---

[3]Although an appellate ruling could render a party a "prevailing party," if "[o]n its face, [the] ruling entitled the [party] to relief," *see Walker v. City of Mesquite*, 313 F.3d 246, 250 (5th Cir. 2002), our prior decision in this matter was not such a ruling. Indeed, in our prior decision, we expressly declined to reach the merits of Goldstein's claims and resolved only the issue of absolute immunity. *See Goldstein v. Moatz*, 364 F.3d 205, 212 n.11 (4th Cir. 2004) ("We note that . . . it is not necessary to determine whether Goldstein has alleged a constitutional violation."). Our earlier decision therefore did not render Goldstein a "prevailing party" as meant in the EAJA. *Cf. Buckhannon*, 532 U.S. at 605 ("[A]n interlocutory ruling that reverses a dismissal for failure to state a claim is not the stuff of which legal victories are made." (internal quotation marks omitted)).

[4]"Tactical mooting" could be recognized as occurring where a defendant has agreed to the plaintiff's requested relief in order to avoid the prospect of an adverse fees and costs award.

party applying for a fees and costs award must first have been accorded some relief in the district court. *See* 532 U.S. at 608-09.[5] We need not and do not decide today whether there is an exception to the *Buckhannon* rule where a defendant has agreed to provide the relief requested in response to an affirmative indication by the presiding court that the plaintiff is about to prevail. In the circumstances presented, we are not at liberty to carve out a tactical mooting exception to the *Buckhannon* principles, and we are obliged to affirm the Fee Order.[6]

### III.

Pursuant to the foregoing, we dismiss Goldstein's appeal of the Mootness Order and affirm the district court's Fee Order.

*AFFIRMED IN PART AND*
*DISMISSED IN PART*

---

[5]In rejecting concerns that defendants could use the *Buckhannon* principles to tactically avoid paying fees and costs, the Court observed:

> [S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it is not clear how often courts will find a case mooted . . . . If a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees. Given this possibility, a defendant has a strong incentive to enter a settlement agreement, where it can negotiate attorney's fees and costs.

532 U.S. at 608-09. In so doing, the Court essentially concluded that a party cannot be designated a "prevailing party" without having first been awarded some relief in court, notwithstanding concerns that such a rule might be used nefariously.

[6]Because Goldstein was not a "prevailing party" within the meaning of the EAJA, we need not reach the district court's alternative rulings that the PTO's position was substantially justified and that the attorneys' fees and costs award requested by Goldstein was unreasonable.