**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1582

JUNFEI GE,

Plaintiff - Appellant,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UR M.
JADDOU, Director, U.S. Citizenship and Immigration Services; FRANK C.
REFFEL, in official capacity as Norfolk Field Office Director, U.S. Citizenship and
Immigration Services,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at
Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:18-cv-00889-JAG)

Argued:  October 28, 2021                     Decided:  December 7, 2021

Before NIEMEYER, AGEE, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee
and Judge Rushing joined.

**ARGUED:**    Trina A. Realmuto, NATIONAL IMMIGRATION LITIGATION
ALLIANCE, Brookline, Massachusetts, for Appellant.  Jonathan Holland Hambrick,
OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellees.
**ON BRIEF:**  David E. Gluckman, MCCANDLISH HOLTON, PC, Richmond, Virginia,
for Appellant.  G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellees.

NIEMEYER, Circuit Judge:

Junfei Ge commenced this action under 8 U.S.C. § 1447(b), requesting that the district court grant his application for U.S. citizenship through naturalization, which had been pending before the U.S. Citizenship and Immigration Services ("USCIS") for more than two and a half years, or, alternatively, that the court remand the matter to USCIS with instructions "to adjudicate the application immediately and to schedule and administer an Oath Ceremony *by a date certain*." (Emphasis added). In response, the district court entered a remand order directing USCIS to "adjudicate the plaintiff's naturalization application within forty-five (45) days of this Order" and retaining jurisdiction to "exercise its authority to hear and decide the case" if the agency failed to comply. Shortly after the court's remand order, however, Ge reported to the court that he had been sworn in as a U.S. citizen, and the court dismissed Ge's action with prejudice.

Ge then filed a motion for his attorneys fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, alleging that he was the "prevailing party" in the action and that USCIS's position was not "justified in law and fact at all stages." The district court denied his motion, ruling that Ge did not qualify as a prevailing party because its remand order was not a judgment on the merits or consent decree that created a "material alteration of the legal relationship of the parties." (Quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001)).

We affirm.

2

# I

Junfei Ge, then a citizen of China, entered the United States on December 28, 2011, on a student visa. After pursuing his education for four years, he enlisted in the U.S. Army through a recruiting program known as Military Accessions Vital to the National Interest ("MAVNI"), which allows certain foreign nationals to enlist in the U.S. armed forces and thereafter to apply for naturalization pursuant to 8 U.S.C. § 1440(a). Ge filed such an application on May 25, 2016, and after completing a series of interviews and tests administered by USCIS, he received notice on July 5, 2017, that his naturalization oath ceremony had been scheduled for later that month. On July 7, 2017, however, he was informed that the ceremony had been cancelled and that he would be contacted "as soon as possible to reschedule." USCIS had, on that date, issued a general directive to its employees requiring that enhanced Department of Defense ("DoD") background checks be completed for all persons in the MAVNI program before their naturalization applications could be granted. It sent Ge a notice to reopen his application, which Ge apparently never received, and DoD began to conduct Ge's enhanced background check.

After hearing nothing for almost a year and a half, Ge commenced this action on December 27, 2018, pursuant to 8 U.S.C. § 1447(b), which gives district courts jurisdiction over naturalization applications delayed for 120 days or more and authorizes those courts to grant or deny such applications or remand them to USCIS "with appropriate instructions." Ge named as defendants USCIS, its director, and its Norfolk, Virginia, field office director (collectively hereafter, "USCIS") and requested that the court either grant his naturalization application or remand it to USCIS with instructions "to adjudicate the

3

application immediately and to schedule and administer an Oath Ceremony by a date certain." Ge also sought relief under the Administrative Procedure Act ("APA") and through a writ of mandamus.

USCIS filed a motion to dismiss in part and to remand, asking the court to dismiss Ge's APA claim and request for a writ of mandamus and to remand to USCIS the claim made pursuant to § 1447(b) to allow USCIS to adjudicate the application after the completion of "all required security and background checks." Ge opposed the motion, arguing that the district court should use its authority under § 1447(b) to adjudicate his application in the first instance or, if the court decided to remand, to instruct USCIS "to schedule [him] for an oath ceremony within 21 days."

By an opinion and order dated June 28, 2019, the district court denied USCIS's motion to dismiss in part and granted its motion to remand. After concluding that it had jurisdiction under § 1447(b), the court observed:

> Ge's application for naturalization has been pending for three years. USCIS approved his application in July, 2017, before the DOD issued its new guidance. The FBI has completed its background check, but USCIS awaits the results of the DOD's enhanced background check, which the DOD has had ample time to complete. In light of these circumstances, the Court will remand the case with specific instructions for USCIS to render a decision within forty-five days.

(Footnotes omitted). Thus, in its remand order, the court directed that USCIS "adjudicate the plaintiff's naturalization application within forty-five (45) days of this Order. If they fail to do so, the plaintiff has fifteen (15) days thereafter to inform the Court. At that time,

4

the Court will exercise its authority to hear and decide the case. Accordingly, the Court STAYS the case for sixty (60) days."[1]

On August 7, 2019, Ge informed the court that "he was happily sworn in as a United States citizen on July 17, 2019, thus successfully concluding this matter and obviating the need for . . . further judicial oversight." The next day, the court issued an order lifting its stay and dismissing the case with prejudice.

Ge thereafter filed a motion for attorneys fees in the amount of $9,684.64 and expenses in the amount of $438.10, pursuant to the EAJA. He asserted that he qualified as the "prevailing party" within the meaning of the Act "since this Court granted him relief by ordering [USCIS] to adjudicate his three-year-delayed [naturalization application] within 45 days, while retaining the authority under 8 U.S.C. § 1447(b) to adjudicate the case if [USCIS] did not." USCIS opposed Ge's motion, arguing that he was not entitled to attorneys fees because the court's remand order did not make him a prevailing party as that term is used in the EAJA.

By an opinion and order dated March 27, 2020, the district court denied Ge's motion, concluding that he did not qualify as a prevailing party under the EAJA. The court noted that to qualify as a prevailing party, Ge must have obtained a "material alteration of the legal relationship of the parties." (Quoting *Buckhannon*, 532 U.S. at 604). The court observed further that under *Buckhannon*, "enforceable judgments on the merits and court-

---

[1] The district court also noted that because it had jurisdiction under § 1447(b) "to decide or remand [Ge's] case," it did not need to reach his APA and mandamus claims, and they are not a subject of this appeal.

5

ordered consent decrees create the material alteration . . . necessary to permit an award of attorney's fees," whereas USCIS's "'voluntary change in conduct[]' . . . does not." (Quoting *Buckhannon*, 532 U.S. at 604–05). The court stated further that "[a]lthough some courts have interpreted *Buckhannon* as merely setting forth examples of what could give rise to 'prevailing party' status, the Fourth Circuit has adopted [the] narrower view" that "*only* enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." (Cleaned up) (quoting *Goldstein v. Moatz*, 445 F.3d 747, 751 (4th Cir. 2006)). It concluded that because its June 28, 2019 remand order "[did] not represent a consent decree or [an] enforceable judgment on the merits," "Ge [was] not a 'prevailing party' under the EAJA." And "[i]n any event," the court observed, its order "set[ting] a time period for USCIS to make a decision . . . [without] consider[ing] the merits of [Ge's] [naturalization] application[] did not materially alter the legal relationship of the parties and did not otherwise resemble a court-ordered consent decree or judgment on the merits."

From the district court's order denying his motion for attorneys fees, Ge filed this appeal, arguing that he was indeed a "prevailing party" within the meaning of the EAJA and that the district court erred in concluding otherwise.

II

Ge contends that he is a prevailing party under the EAJA and therefore entitled to attorneys fees because the district court's remand order "materially altered the legal relationship" between him and USCIS in a manner favorable to him by imposing a 45-day

6

deadline on USCIS to adjudicate his naturalization application — a deadline to which USCIS had not otherwise been subject. He notes that before entry of the order, his "naturalization application had been pending for over three years" and that when the district court granted relief by directing USCIS to adjudicate his naturalization application within 45 days, he "achieved the exact type of legal relationship change contemplated by [8 U.S.C.] § 1447(b)." Ge adds that the remand order was also judicially enforceable because it provided that if USCIS did not decide his application within 45 days, "the court itself" would do so. Therefore, he argues, the court's remand order made him a prevailing party because it "(a) memorialize[d] a 'material alteration of the legal relationship of the parties' and (b) [was] judicially enforceable," as required by *Buckhannon*, 532 U.S. at 604–05. Ge concludes that "the district court committed reversible error when it failed to recognize that its decision and remand order satisfied *Buckhannon*'s requirements as either a merits judgment or the equivalent of a consent decree."

Under the "American rule" applicable in our legal system, attorneys fees are typically not awarded to the prevailing party, as is done in many other legal systems; rather, "parties are ordinarily required to bear their own attorney's fees." *Buckhannon*, 532 U.S. at 602. Of course, statutory authority may provide otherwise, as the EAJA does. That statute provides:

> [A] court shall award *to a prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

7

The term "prevailing party" is a "legal term of art" that is "interpreted . . . consistently" across various statutory fee-shifting provisions. *Buckhannon*, 532 U.S. at 603 & n.4. And to be a prevailing party, "a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail." *Id*. at 603 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). Moreover, the plaintiff must show that this relief created a "material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Id.* at 604–05. The *Buckhannon* Court explained that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees" and that it "ha[s] only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree." *Id*. (cleaned up). To emphasize the limitations inherent in these criteria, the Court noted "that an *interlocutory* ruling that reverses a dismissal for failure to state a claim 'is not the stuff of which legal victories are made.'" *Id*. at 605 (emphasis added) (quoting *Hewitt*, 482 U.S. at 760). Similarly, an *interlocutory* ruling that reverses a directed verdict for a defendant does not make a plaintiff a prevailing party. *Id*. (citing *Hanrahan v. Hampton*, 446 U.S. 754 (1980) (per curiam)); *see also Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 277 (4th Cir. 2002) (holding that a preliminary injunction was not an enforceable judgment on the merits for prevailing party purposes); *cf. Sole v. Wyner*, 551 U.S. 74, 86 (2007) (holding that "a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees . . . if the merits of the case are ultimately decided against her"). The *Buckhannon* Court also noted that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to

8

achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" necessary to make the plaintiff a prevailing party. 532 U.S. at 605.

In short, "prevailing party" is a legally defined and limited term, and for a plaintiff to be a prevailing party, he must obtain (1) a judgment, consent decree, or similar order, (2) that grants him some relief on the merits, (3) that materially alters the legal relationship between him and the defendant, and (4) that is enforceable by the court. The district court's remand order in this case raises questions about the first three factors, which we address in turn.

A

While Ge contends that the district court's remand order "satisfied *Buckhannon*'s requirements as either a *merits judgment* or the equivalent of *a consent decree*" (emphasis added), in a formal sense, the remand order was neither. A judgment is understood to be an order sufficiently final that an appeal will lie from it. *See, e.g.*, Fed. R. Civ. P. 54(a). But the court's remand order in this case was clearly interlocutory and not appealable. It required USCIS to conduct further proceedings within a specified time and retained the court's jurisdiction to adjudicate the matter on the merits if the agency did not comply. The order did not resolve the matter such that it could be called a "judgment" under any accepted definition of the term. As an interlocutory order, it was more in the nature of the orders described by *Buckhannon* and *Smyth* as failing to satisfy the prevailing party requirements. *See Buckhannon*, 532 U.S. at 605 (reversal of dismissal for failure to state a claim; reversal of directed verdict); *Smyth*, 282 F.3d at 277 (preliminary injunction).

9

Moreover, the district court's remand order was not a consent decree, which is normally understood to be a settlement agreement between the parties that is embodied in a court order and subject to judicial approval and oversight. *See Smyth*, 282 F.3d at 281. The remand order embodied no settlement agreement. To the contrary, prior to issuance of the remand order, USCIS communicated to the court that it could commit to ruling on Ge's naturalization application "no later than the next business day 45 days after the date [of the] remand order." Ge, however, refused to agree to this proposal, instead requesting that the court either rule on his application itself or, in the alternative, remand to the agency with "explicit instructions to schedule [him] for an oath ceremony within 21 days or a similar time certain." Thus, there was neither an agreement nor the embodiment of an agreement in the remand order to make it a consent decree or the equivalent thereof.

Despite his assertion that the remand order was a judgment or consent decree, Ge argues further that limiting the prevailing party inquiry to a question of whether he obtained a judgment or consent decree is too restrictive and that *Buckhannon* contains no such limitation. While Ge may have a valid point, the *Buckhannon* Court came very close to suggesting that no other type of order could render a plaintiff a prevailing party. The Court made the observation that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (cleaned up). And while that statement alone may not have excluded other types of orders, the Court went on to point out that "[w]e *have only awarded attorney's fees* where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree." *Id*. at 605 (emphasis

10

added) (citation omitted). Nor have we found any other type of order that would satisfy the *Buckhannon* criteria. Indeed, we have concluded that "in *Buckhannon*, the Court instructed the lower courts that *only* 'enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'" *Goldstein*, 445 F.3d at 751 (emphasis added) (quoting *Buckhannon*, 532 U.S. at 604). To be sure, we have not required that an order be labeled as a "judgment" or "consent decree," but we have insisted that it be an order that grants "judicially sanctioned and enforceable final relief." *J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009). In any event, we need not resolve here the possible tension regarding whether any other type of order can bestow prevailing party status. Rather, our consideration of whether the order here granted Ge some relief *on the merits* and whether that relief *materially altered the legal relationship* of the parties more readily resolves whether he was a prevailing party.

B

To address whether the remand order constituted a decision *on the merits*, it is useful to recount the nature of this case and the claims made. The case began with Ge's application for naturalization submitted pursuant to 8 U.S.C. § 1440(a) and based on his military service through the MAVNI program. When USCIS received the application, a USCIS employee was tasked with conducting an examination of "any matter touching or in any way affecting the admissibility of [the] applicant," *id*. § 1446(b), and upon completion of the examination, was required to "make a determination" to grant or deny

11

the application, *id*. § 1446(d).  If the application had been denied, Ge could have requested a hearing before an immigration officer.  *Id*. § 1447(a).  And had that immigration officer also denied his application, he could have sought de novo judicial review.  *Id*. § 1421(c).

With respect to Ge's application, however, because no decision was made by USCIS within 120 days following his examination, Ge was authorized to seek relief in a United States district court under § 1447(b).  That subsection provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).  This provision confers jurisdiction on a district court when the 120-day delay has occurred.  It then authorizes the court to pursue one of two courses:  (1) the court may *determine the matter*, i.e., grant or deny the application for naturalization processed under § 1446; or (2) it may *remand the matter* to USCIS to determine it in the first instance and accompany its remand order "with appropriate instructions."  *Id*.  If the court acts to determine the matter, it renders a judgment *on the merits of the application for naturalization*.  But if it remands the matter to the agency for a determination, it does not rule on the merits of the application but rather leaves the determination on the merits to the agency, at least at that point in the process.

In this case, the court did not rule on the merits of Ge's naturalization application but rather remanded the application with instructions that USCIS make a ruling within 45 days.  Moreover, the court reserved jurisdiction to enable it to decide the case on the merits

12

should USCIS fail to do so. It is clear, therefore, that in remanding the matter, the court never ruled on the merits. Rather, it established a *procedure* by which the merits decision could be made promptly. Thus, while Ge was successful in obtaining a procedural ruling that would ensure a timely decision on the merits, he never obtained an order ruling on the merits.[2]

Ge tries to avoid this inevitable conclusion by arguing that the remand order was on the merits because it granted the relief explicitly made available by § 1447(b). He relies on the proposition that to be a prevailing party, he "need not prevail on every issue." (Quoting *Kanawha County Bd.*, 571 F.3d at 387). While that is true, he must nonetheless prevail on some issue *on the merits*. *See Buckhannon*, 532 U.S. at 603–04; *id*. at 606 (referring to the "merit requirement" recognized in prior cases (cleaned up)). And the merits at issue under § 1447(b) concern the grant or denial of a pending application for naturalization. Indeed, § 1447(b) explicitly so provides, stating that the district court can "determine the *matter*" or "remand the *matter*" for an agency determination. (Emphasis added). In either event, the *matter* refers to the pending application for naturalization. *See Etape v. Chertoff*, 497 F.3d 379, 384 (4th Cir. 2007) (holding that the "proper filing of a § 1447(b) petition provides a federal court with exclusive jurisdiction *over a naturalization application*" (emphasis added)). Ge's argument fails to recognize that the district court did not decide the merits of the matter but merely remanded it. Thus, its order was only a

---

[2] Indeed, Ge obtained relief on the merits only on the voluntary act of USCIS, which led to the dismissal of his lawsuit. But obtaining relief in this manner does not make him a prevailing party. *See Buckhannon*, 532 U.S. at 605 (rejecting the "catalyst theory" as a basis for prevailing party status).

procedural order, not an order on the merits. Parties who obtain merely procedural orders are not prevailing parties for purposes of fee-shifting statutes such as the EAJA. The Supreme Court made this clear when it pointed out that interlocutory orders reversing a dismissal for failure to state a claim or reversing a directed verdict for the defendant do not make the plaintiff a prevailing party. *Buckhannon*, 532 U.S. at 605 (citing *Hewitt*, 482 U.S. at 760, and *Hanrahan*, 446 U.S. at 754). And we ruled similarly with respect to a preliminary injunction in *Smyth*. 282 F.3d at 277.

In sum, we conclude that the district court's order entered by authority of § 1447(b), remanding Ge's naturalization application to USCIS to decide it within 45 days, was not a merits decision that made Ge a prevailing party under the EAJA.

C

We also conclude that the district court's remand order did not *materially alter the legal relationship* of the parties. Ge contends otherwise, arguing that, absent the district court's remand order, "USCIS would not have had a deadline for adjudication and [he] would not have had the availability to seek further relief (adjudication) in district court." He thus suggests that even if the remand order could not be characterized as a judgment on the merits or a consent decree, it still satisfied *Buckhannon*'s "material alteration" standard because it forced USCIS to do something (adjudicate Ge's application by a date certain) that it would not otherwise have been required to do. This argument, however, attributes too broad a sweep to the "material alteration" standard.

14

If a material alteration occurs whenever a court order forces a party to undertake an action that it was not previously obligated to undertake, then virtually any court order would satisfy *Buckhannon*'s inquiry. After all, even orders that are strictly procedural — e.g., orders scheduling a case for trial or instructing parties to participate in a pretrial settlement conference — require the parties to do things that they would not otherwise be required to do. Yet, the Supreme Court has made clear that the "material alteration" requirement must be understood to require some "*resolution of the dispute* which changes the legal relationship between [the plaintiff] and the defendant." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (emphasis added); *see also Buckhannon*, 532 U.S. at 604 (relying on *Garland*). With this understanding, it becomes apparent that Ge cannot make the necessary showing with respect to the remand order.

Upon commencing this action, the legal relationship between Ge and USCIS was that Ge was an applicant for naturalization; USCIS was the agency that could grant or deny that application; and no determination on the merits of the application had been made. The unresolved dispute centered on whether the application would be granted or denied. After the district court entered its remand order, Ge was still the applicant; USCIS was still the agency that could grant or deny the application; and no determination had been made on the merits of the application. The issue in dispute remained whether to grant or deny the application. Simply put, the legal relationship with respect to the underlying dispute had not changed as a result of the remand order, and therefore the order did not make Ge the prevailing party.

\*　　\*　　\*

15

At bottom, we conclude that Ge was not the prevailing party in this action, as the term "prevailing party" is used in the EAJA, and therefore, we affirm the judgment of the district court.

AFFIRMED