# United States Court of Appeals
## For the First Circuit

No. 22-1616

DIANA AVDEEVA,

Plaintiff, Appellant,

v.

SHANITA TUCKER, Field Office Director, U.S. Citizenship and
Immigration Services; PETER SIMONDS, Immigration Services
Officer, U.S. Citizenship and Immigration Services; DENIS C.
RIORDAN, District Director, U.S. Citizenship and Immigration
Services; KIKA SCOTT, Senior Official Performing the Duties of
the Director, U.S. Citizenship and Immigration Services,*

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Gregory Romanovsky, Esq., with whom Romanovsky Law Offices
was on brief, for appellant.

Huy M. Le, Trial Attorney, Office of Immigration Litigation,
Civil Division, with whom Brian M. Boynton, Principal Deputy
Assistant Attorney General, Civil Division, William C. Peachey,

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Senior Official Performing the Duties of the Director Kika Scott
is substituted for former Director Ur Mendoza Jaddou.

Director, District Court Section, Office of Immigration Litigation, and <u>T. Monique Peoples</u>, Senior Litigation Counsel, were on brief, for appellees.

---

May 28, 2025

---

**HOWARD**, **Circuit Judge**. Diana Avdeeva appeals from the district court's denial of her motion for attorney's fees. Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, Avdeeva sought to recover the fees that she incurred in bringing a lawsuit -- which was ultimately settled -- against the United States Citizenship and Immigration Services ("USCIS") for its failure to timely adjudicate her application for naturalization within the statutorily mandated period.[1] Concluding that Avdeeva is not a "prevailing party" and is thus not entitled to fees under EAJA, we affirm.

## I.

In 2013, Avdeeva, a citizen of Russia, married Grigoriy Rogach, a United States citizen. Shortly thereafter, Avdeeva filed an application for lawful permanent-resident status with USCIS. USCIS approved Avdeeva's application but granted her permanent-resident status on a conditional, two-year basis because she had been married to Rogach for less than two years. See 8 U.S.C. § 1186a(a)(1).

Avdeeva and Rogach subsequently filed a petition (the "I-751 petition") to have the conditional nature of her residence

---

[1] Avdeeva initiated suit against various USCIS personnel in their official capacities: Shanita Tucker, Field Office Director; Peter Simonds, Immigration Services Officer; Denis C. Riordan, District Director; and Ur Mendoza Jaddou, Director. Taking the parties' lead, we refer to the defendants-appellees collectively as "USCIS" for simplicity's sake.

- 3 -

in the United States removed. USCIS neither scheduled an interview on the I-751 petition nor waived the interview requirement within ninety days of Avdeeva's filing of the petition as required. See 8 C.F.R. § 216.4(b)(1) ("The director must either waive the requirement for an interview and adjudicate the petition or arrange for an interview within 90 days of the date on which the petition was properly filed."). USCIS did, however, request additional evidence from Avdeeva in connection with its review.

Avdeeva and Rogach divorced in 2018. Avdeeva notified USCIS of the divorce and requested that the I-751 petition (on which USCIS had still not acted) be converted to a waiver petition. See 8 C.F.R. § 216.5(a)(1)(ii) (providing for waiver where applicant can establish that "[t]he marriage upon which his or her status was based was entered into in good faith by the conditional resident alien, but the marriage was terminated other than by death"). In support of that request, she submitted materials demonstrating that she and Rogach had been in a bona fide marital relationship. In 2019, still without any action from USCIS on her I-751 petition, Avdeeva applied for naturalization.

USCIS in turn scheduled a supposed naturalization interview, but at the interview, the immigration officer instead focused on Avdeeva's pending I-751 petition. USCIS subsequently denied that petition on the basis that Avdeeva had failed to establish that she entered into her marriage in good faith;

terminated her permanent-resident status; and placed her into removal proceedings. USCIS then closed Avdeeva's naturalization case on the ground that it could not adjudicate her naturalization application because she was subject to removal proceedings.

Avdeeva brought two actions against USCIS in response: the first suit (the "APA suit") challenged USCIS's actions as having violated various immigration regulations, the Administrative Procedure Act, and her right to due process; the second suit (which forms the basis of this appeal), meanwhile, alleged that USCIS failed to adjudicate her naturalization application within the statutorily-mandated period and asked the district court to take jurisdiction over that application pursuant to 8 U.S.C. § 1447(b). The government moved to dismiss both actions.

While the government's motions to dismiss were pending, the parties entered into a settlement agreement and filed a joint motion to remand the matters to USCIS pursuant to that agreement. The parties' settlement agreement obligated USCIS, within sixty days of remand, to terminate Avdeeva's removal proceedings, approve her I-751 petition, and conduct a new naturalization interview. USCIS further agreed that, if Avdeeva met all requirements for naturalization, her naturalization oath would be administered within that same sixty-day period. For her part, Avdeeva agreed to "voluntarily dismiss all pending claims and

withdraw her claim for damages under the Federal Tort Claims Act" following USCIS's performance under the agreement.

Pursuant to the agreement, the district court remanded this case to USCIS and stayed the APA action. Avdeeva was naturalized in August 2020. She then voluntarily dismissed the APA suit and received a judgment of dismissal from the district court "in accordance with the parties' settlement agreement" in the instant action. Avdeeva in turn moved for attorney's fees in the instant action pursuant to EAJA. The district court denied that motion on the basis that special circumstances -- namely, the terms of the parties' settlement agreement -- would make an award of attorney's fees to Avdeeva unjust. The district court also suggested, but did not definitively conclude, that Avdeeva was not a "prevailing party" under EAJA. Avdeeva appeals from that denial.

## II.

Avdeeva challenges the district court's findings that: (1) she may not be entitled to prevailing-party status, and (2) even if she were a prevailing party, special circumstances would make an award of attorney's fees unjust. Because we conclude that Avdeeva is not a "prevailing party" within the meaning of EAJA, we agree with the district court that she is not entitled to attorney's fees and accordingly affirm the dismissal below.[2]

---

[2] Although the district court did not base its dismissal on its finding that Avdeeva was likely not a prevailing party, "[w]e

- 6 -

EAJA dictates that, in a civil action involving the United States as a party, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

As it is used in EAJA, the term "prevailing party" is a "legal term of art" that refers to "one who has been awarded some relief by the court." Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Hum. Res., 532 U.S. 598, 603 (2001). "We review a determination of 'prevailing party' status de novo." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011). "Where, as in this case, the application of [a fee-shifting] statute cuts through the government's traditional sovereign immunity, it 'must be construed strictly in favor of the government.'" Id. (quoting Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009) (en banc)).

To qualify as a prevailing party for the purposes of EAJA, a party must show: (1) a "material alteration of the legal relationship of the parties" and (2) a "judicial imprimatur on the change." Aronov, 562 F.3d at 89 (quoting Buckhannon, 532 U.S. at

---

are at liberty to affirm a district court's judgment on any ground made manifest by the record." United States v. George, 886 F.3d 31, 39 (1st Cir. 2018).

- 7 -

604-05).[3]   Avdeeva and USCIS agree that there was a material alteration of their legal relationship but disagree as to whether there was a "judicial imprimatur" on that change.  Our analysis thus focuses on that second prong of the test.

The judicial-imprimatur requirement is satisfied where a plaintiff "receive[s] a judgment on the merits" or, as potentially applicable here, where a plaintiff "obtain[s] a court-ordered consent decree."  Buckhannon, 532 U.S. at 605.  We have clarified "that the formal label of 'consent decree' need not be attached" to a court order for us to find judicial imprimatur and that, instead, we must determine "whether the order contains the sort of judicial involvement and actions inherent in a 'court-ordered consent decree.'"  Aronov, 562 F.3d at 90.  The Supreme Court has "emphasized three related factors" relevant to this determination: (1) "the change in legal relationship must be 'court-ordered'"; (2) "there must be judicial approval of the relief vis-à-vis the merits of the case"; and (3) "there must be judicial oversight and ability to enforce the obligations imposed on the parties."  Id. (discussing Buckhannon, 532 U.S. at 604 &

---

[3] "Although the issue in Buckhannon was the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the American With Disabilities Act of 1990, . . . the Supreme Court's reasoning in 'Buckhannon is presumed to apply generally to all fee-shifting statutes that use the "prevailing party" terminology . . . .'"  Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 22 n.8 (1st Cir. 2005) (citations omitted) (quoting Doe v. Bos. Pub. Schs., 358 F.3d 20, 25 (1st Cir. 2004)).

n.7). Avdeeva fails to demonstrate that any of these three factors are present.

**i.**

First, Avdeeva cannot demonstrate that the change in the legal relationship between her and USCIS was achieved via court order.

When determining whether a change in the parties' legal relationship was "court-ordered," we distinguish between "a situation in which the court order <u>triggers</u> the change in the relationship between the parties" and "one in which 'the court merely recognizes what the government has voluntarily agreed to do and only requires the government to follow through.'" <u>Hutchinson</u>, 636 F.3d at 9 (cleaned up) (emphasis added) (quoting <u>Aronov</u>, 562 F.3d at 93). Where a case falls into the latter category, the change in legal relationship cannot fairly be characterized as "court-ordered." <u>See</u> <u>Buckhannon</u>, 532 U.S. at 605-06 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial <u>imprimatur</u> on the change. . . . [T]he term 'prevailing party' [does not] authorize[] federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief."); <u>see also</u>

Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 22-23 (1st Cir. 2005) ("The Court expressly rejected the '"catalyst theory," which posits that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" (quoting Buckhannon, 532 U.S. at 601)).

The change in the legal relationship between Avdeeva and the government was achieved through the parties' settlement and, ultimately, USCIS's grant of Avdeeva's application for naturalization, not the district court's remand order.[4] Instead, the district court's order simply stated that it was remanding the matter pursuant to the parties' settlement, and the settlement agreement placed a conditional obligation on USCIS to grant Avdeeva's naturalization application "[i]f [she] me[t] all requirements for naturalization." The change in the legal relationship was thus not "court-ordered." Indeed, the Fourth Circuit explained as much in Ge v. USCIS, 20 F.4th 147, 157 (4th Cir. 2021), where it held that an order of remand did not confer

---

[4] The parties' settlement agreement did place an unconditional obligation on USCIS to grant Avdeeva's I-751 petition. However, Avdeeva voluntarily dismissed, and does not seek attorney's fees in, her lawsuit concerning USCIS's adjudication of that petition; instead, Avdeeva seeks attorney's fees only for her challenge to USCIS's handling of her application for naturalization, and thus it is the legal change between the parties with respect to that application that is relevant here.

- 10 -

prevailing-party status in a § 1447(b) action (albeit one that did not involve a settlement between the parties):

> Upon commencing this action, the legal relationship between [the plaintiff] and USCIS was that [the plaintiff] was an applicant for naturalization; USCIS was the agency that could grant or deny that application; and no determination on the merits of the application had been made. . . . After the district court entered its remand order, [the plaintiff] was still the applicant; USCIS was still the agency that could grant or deny the application; and no determination had been made on the merits of the application. . . . Simply put, the legal relationship with respect to the underlying dispute had not changed as a result of the remand order, and therefore the order did not make [the plaintiff] the prevailing party.

Avdeeva argues that, regardless of the parties' settlement and the effect of USCIS's actions, the change was necessarily "court-ordered" because the filing of her § 1447(b) action deprived USCIS of jurisdiction to adjudicate her application for citizenship until there was district court action in the form of a remand. We rejected this exact argument in Aronov and do the same here. See 562 F.3d at 93-94 ("We need not resolve the question of whether the agency could have acted without the remand, as it does not matter to our resolution of the judicial imprimatur issue. The order remanding to the agency is alone not enough to establish the needed imprimatur." (footnote omitted)).

**ii.**

Second, there was not "judicial approval of the relief vis-à-vis the merits of [Avdeeva's] case." Id. at 90.

The district court's remand order expressly stated that the parties' settlement agreement, not the district court's resolution of the merits of Avdeeva's § 1447(b) claim, provided the basis for the remand. See Order of Remand 1, ECF No. 29 ("This matter is remanded to [USCIS] in accordance with the parties' settlement agreement . . . ." (emphasis added)). Avdeeva argues that the district court nonetheless necessarily considered the merits of its claim given that "this case involved two fully briefed motions to dismiss, as well as a scheduling conference during which both sides presented their legal arguments." However, the fact that the merits were argued before the court does not compel the conclusion that the court's relief was based on its consideration of those merits. Indeed, the court explicitly noted that it did not do so here. See Mem. & Order 9, ECF No. 57 ("Here, although the parties fully briefed the government's Motion to Dismiss [Doc. No. 14], as in Aronov, prior to dismissal, '[t]he court made no evaluation at all of the merits of the controversy -- indeed the court was never asked to do so; it was only asked to dismiss the case.'" (quoting 562 F.3d at 92 (alteration in original))).

Finally, both "judicial oversight and [the] ability to enforce the obligations imposed on the parties" are absent here. Aronov, 562 F.3d at 90.

A consent decree "'includes an injunction, or some other form of specific relief,' which may ultimately be enforceable by contempt," whereas a private settlement, which may be enforceable through an action for breach of contract, "does not require the same level of judicial oversight" and "is insufficient to meet the standards for a consent decree." Id. at 91 (quoting Charles A. Wright & Mary Kay Kane, Law of Federal Courts § 98, at 702 n.2 (6th ed. 2002)). Here, the district court's order merely noted that the matter was "remanded to [USCIS] in accordance with the parties' settlement agreement." Critically, the order "did not contain provisions for future enforcement typical of consent decrees" and "did not resolve a dispute between the parties[;] it merely returned jurisdiction to the agency to allow the parties to carry out their agreement." Id. at 92.

Avdeeva, however, argues that the district court did retain jurisdiction to enforce the settlement agreement because the remand order incorporated its terms. This argument is unconvincing.

"[A] federal court does not have inherent jurisdiction to enforce a settlement merely because it presided over the law

- 13 -

suit that led to the settlement." F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 449 F.3d 185, 189 (1st Cir. 2006) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)). A federal court can exercise ancillary jurisdiction to enforce that agreement only where the terms of the agreement are incorporated into the order of dismissal. Id. at 189-90.

There was no such incorporation here, however, as the district court's order merely noted the existence of the parties' agreement. See Kokkonen, 511 U.S. at 381 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [her] order."). We have explained that, even where a district court's order explicitly notes that it is made "pursuant to" the parties' settlement agreement, this "is not enough to 'incorporate the terms'" of that agreement into the order. F.A.C., Inc., 449 F.3d at 190; see also Aronov, 562 F.3d at 92 n.13 ("[I]t is . . . firmly the law that there must be a clear basis within the [district court's order] for both the court's continuing jurisdiction and its power to enforce an agreement between the parties. . . . [The] court's order must expressly retain jurisdiction or expressly incorporate the terms of a settlement agreement . . . ." (emphasis added)); Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 283 (4th Cir. 2002) ("Where a court merely recognizes the fact of the parties' agreement and dismisses the case because there is no longer a dispute before it,

- 14 -

the terms of the agreement are not made part of the order and consequently will not serve as a basis of jurisdiction.").

The only other support that Avdeeva advances in favor of this argument is the district court's statement, made in its subsequent order on the motion for attorney's fees, that it had "retain[ed] jurisdiction over the matter." See Mem. & Order 10, ECF No. 57. However, in Aronov we explained that we do not credit a district court's later characterization of its remand order as having retained jurisdiction where that order unambiguously "lacked any provision mandating the USCIS to act or expressly retaining jurisdiction to force the government to act." 562 F.3d at 92 n.13. The district court's comment thus does not bear the weight that Avdeeva ascribes to it.

## III.

For the reasons stated, Avdeeva cannot establish that she is a "prevailing party" under EAJA, and the district court's dismissal of her petition for attorney's fees is accordingly **affirmed**.[5]

---

[5] Because we conclude that Avdeeva is not a "prevailing party" under EAJA, we need not address whether the parties' settlement agreement would make an award of attorney's fees unjust.